UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
CONSERVATION LAW FOUNDATION, INC., )
ET AL.,                            )
      Plaintiffs,                  )
                                   )
      v.                           )        C.A. No. 11-11657-MLW
                                   )
LISA P. JACKSON, ET AL.,           )
      Defendants.                  )
```

MEMORANDUM AND ORDER CONCERNING COUNT IV

WOLF, D.J.                                    August 23, 2013

I. INTRODUCTION

Plaintiffs Conservation Law Foundation ("CLF") and Buzzards Bay Coalition, Inc. ("BBC") assert in their First Amended Complaint (the "FAC") four claims under §208 Clean Water Act (the "CWA"), 33 U.S.C. §1288, and the Administrative Procedure Act (the "APA"), 5 U.S.C. §706(2). In general, plaintiffs allege that the Environmental Protection Agency ("EPA") violated the CWA and the regulations promulgated pursuant to that statute in a manner that contributed to increased levels of nitrogen in certain waters around Cape Cod (the "embayments" or "waters"). Those increased nitrogen levels, plaintiffs contend, have degraded and continue to degrade the embayments in a manner that has injured the recreational, commercial, and aesthetic interests that plaintiffs' members have in those waters.

For the reasons described orally on August 23, 2013, the court has granted the motion of defendants Lisa P. Jackson, the

Administrator of the EPA, and Curt Spaulding, its Regional Administrator, to dismiss the claims in Counts I, II, and III against them in their official capacities.

In Count IV, plaintiffs assert that the EPA's mandatory annual reviews of how Massachusetts administers its State Revolving Fund ("SRF") monies has been arbitrary, capricious, and contrary to law. See FAC ¶¶103, 113. Under the CWA, the EPA has the authority to grant money to a state's SRF fund for certain types of waste water management projects and subject to certain restrictions on the use of those funds. The EPA has a mandatory duty to review on an annual basis, a state's plans and reports concerning the state's use of those SRF funds. See 33 U.S.C. §1386(e). Plaintiffs claim that Massachusetts cannot be administering its SRF funds for the Cape Cod region in accordance with the CWA because there has not been an updated, certified, and approved §208 areawide plan for that region since 1978. See FAC ¶¶101-02. Therefore, they assert under the APA that the EPA's review of Massachusetts' administration of its SRF funds has been arbitrary, capricious, and contrary to the CWA. See id. ¶¶102-03. Plaintiffs also allege that the EPA's annual reviews are unlawful because they have been unsupported by the administrative record developed for the purpose of those reviews. See id. ¶103.

Plaintiffs seek declaratory and injunctive relief concerning Count IV. More specifically, plaintiffs request a declaration that

defendants acted arbitrarily, capriciously, and contrary to law by determining that Massachusetts' administration of its SRF funds complies with §208 of the CWA, and a declaration that the EPA unlawfully failed to notify the Commonwealth of its noncompliance. They seek an injunction requiring: (1) the EPA to notify the Commonwealth of its noncompliance; and (2) an update to the §208 areawide plan within one year.

For the reasons described in this Memorandum and Order, defendants' motion to dismiss Count IV, pursuant to Federal Rule of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction is being denied.[1]

II.  ANALYSIS

"It is the plaintiff's burden to prove the existence of subject matter jurisdiction." Aversa v. United States, 99 F.3d 1200, 1209 (1st Cir. 1996) (citing Murphy v. United States, 45 F.3d 520 (1st Cir. 1995). Where, as the parties agree is appropriate here, a court decides a Rule 12(b)(1) motion on the pleadings, it must "construe the Complaint liberally and treat all well-pleaded

---

[1]In their motion to dismiss and supporting memorandum, defendants state that they also seek dismissal, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim on which relief may be granted.  However, defendants made no argument concerning this contention in their memorandum or at the hearings held on August 20 and 21, 2013.  Therefore, the court deems this possible basis for dismissal to have been waived.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work."), cert. denied, 494 U.S. 1082 (1990).

facts as true[,] according the plaintiff the benefit of all reasonable inferences." Murphy, 45 F.3d at 522; accord Calderon-Serra v. Wilmington Trust Co., 715 F.3d 14, 17 (1st Cir. 2013). However, a court is not "'bound to accept as true a legal conclusion couched as a factual allegation.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

In Count IV, plaintiffs generally allege that because the §208 areawide plan for Cape Cod is so outdated, and the 1978 plan states that it will be updated annually, any decisions by the EPA to continue to allow Massachusetts to fund SRF projects consistent with that 1978 plan are arbitrary, capricious, or contrary to law. See FAC ¶¶84-85, 100-03. Plaintiffs further allege that "[a]s a result of Defendants' actions and omissions" with respect to the administration of SRF funds on Cape Cod, "they have suffered and will continue to suffer injuries to their aesthetic, environmental, recreational, and commercial interests in enjoying and utilizing the affected Cape Cod waters." Id. ¶104.

Defendants argue that Count IV must be dismissed for lack of subject matter jurisdiction because: (1) plaintiffs do not have standing to assert their SRF claim; (2) plaintiffs' SRF claim is not ripe for adjudication; and (3) the EPA's annual reviews of Massachusetts' administration of its SRF funds do not constitute final agency action under the APA. At the hearing on August 21,

2013, defendants also argued that the provisions of the CWA that govern the EPA's annual reviews of SRF funding, 33 U.S.C. §§1386(e) and (f), do not require the agency to consider whether a state's use of its SRF funds is consistent with the applicable §208 areawide plan.  As described below, none of these contentions are correct.

A.   <u>Defendants' Statutory Arguments</u>

Defendants argue that states, not the EPA, have the obligation to determine whether SRF-funded projects are consistent with the pertinent §208 areawide plan.  Defendants are correct that the states have an obligation to ensure that each project that they finance with SRF money is consistent with any applicable §208 areawide plan.  Under 33 U.S.C. §1383(f), "A State may provide financial assistance from its water pollution control revolving fund only with respect to a project which is consistent with plans, if any, developed under section[] . . . 1288 [§208] . . . of this title."

However, contrary to defendants' contention, the EPA does have a responsibility for determining whether a state is, in fact, complying with that obligation. The CWA provides that the EPA "shall conduct an annual oversight review of each State plan" and report concerning the state's use of SRF monies, "and other such materials as are considered necessary and appropriate in carrying out the purposes of this subchapter [VI of the CWA, 33 U.S.C.

§§1381-87]." Id. §1386(e). As defendants recognize, one purpose of Subchapter VI is to ensure that states only allocate their SRF funds to projects that are consistent with an operative §208 areawide plan. See id. §1383(f). It follows that as part of the EPA's annual review process under §1386(e) to carry out the purposes of Subchapter VI, it has a duty to ensure that states are administering their SRF funds in accordance with any operative §208 areawide plan. In this case, the 1978 areawide plan for Cape Cod is still in effect. Accordingly, the EPA's reviews of Massachusetts' use of its SRF funds on Cape Cod must consider whether the Commonwealth is administering those funds consistent with the 1978 §208 areawide plan.

Defendants also argue that the EPA need not consider §208 areawide plans when the agency performs its annual reviews because 33 U.S.C. §1386(f) states that: "Except to the extent provided in this subchapter [VI], the provisions of subchapter II of this chapter [which contains §208] shall not apply to grants under this subchapter [VI]." The key clause in that provision, which defendants did not mention in their argument, is "[e]xcept to the extent provided in this subchapter [VI]." Id. Section 1383(f) of Subchapter VI mandates that a state spend SRF funds on a project only if that project is consistent with the applicable §208 areawide plan. Accordingly, §1386(f) does not relieve the EPA of the responsibility to ensure during its annual reviews that

Massachusetts is using its SRF funds in a manner that is consistent with the 1978 §208 areawide plan.

B. Standing

   1. Legal Standards for Standing

The three constitutional requirements for plaintiffs to have standing are: (1) injury in fact; (2) causation; and (3) redressibility. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992); accord Katz v. Pershing LLC, 672 F.3d 64, 71-72 (1st Cir. 2012). Because plaintiffs are the party seeking to invoke federal jurisdiction in this case, they bear the burden of establishing the elements of standing for each claim that they assert. See Lujan, 504 U.S. at 561; Katz, 672 F.3d at 71. Plaintiffs must support each of the elements of standing "in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." Lujan, 504 U.S. at 561. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim." Id. (internal quotation marks omitted); accord Bennett v. Spear, 520 U.S. 154, 168 (1997).

In addition to the three constitutional requirements for standing, the standing inquiry also has "prudential dimensions."

<u>Katz</u>, 672 F.3d at 72. One of those dimensions is that the interest that a plaintiff asserts when making an APA claim "must be 'arguably within the zone of interests to be protected or regulated by the statute' that he says was violated." <u>Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak</u>, 132 S. Ct. 2199, 2210 (2012) (quoting <u>Ass'n of Data Processing Serv. Orgs., Inc. v. Camp</u>, 397 U.S. 150, 153 (1970)); <u>accord</u> <u>Katz</u>, 672 F.3d at 72.

### 2. <u>Plaintiffs' Standing On Behalf of Their Members</u>

An organization, such as each of the plaintiffs here, may sue based on an injury to itself, <u>see</u> <u>Havens Realty Corp. v. Coleman</u>, 455 U.S. 363, 379 n.19 (1982), or, under certain circumstances, it may "sue based on injuries to its members' interests," <u>Animal Welfare Inst. v. Martin</u>, 623 F.3d 19, 25 (1st Cir. 2010); <u>accord</u> <u>Council of Ins. Agents & Brokers v. Juarbe-Jimenez</u>, 443 F.3d 103, 108 (1st Cir. 2006). A plaintiff organization has standing to bring an action "based on injuries to its members' interests only if (1) at least one of its members would have standing to sue as an individual, (2) 'the interests at stake are germane to the organization's purpose,' and (3) individual members' participation is not necessary to either the claim asserted or the relief requested." <u>Animal Welfare Inst.</u>, 623 F.3d at 25 (quoting <u>Friends of the Earth, Inc. v. Laidlaw Envtl. Serv., Inc.</u>, 528 U.S. 167, 181

(2000)).

In this case, there is no dispute that plaintiffs satisfy the second requirement for an organization to allege standing on behalf of its members. The interests of plaintiffs' members in preserving their ability to use and enjoy the embayments is germane to CLF and BBC's missions, as those organizations focus their work on protecting and preserving water quality, including that of the embayments. See FAC ¶¶18-19.

There is also no dispute that plaintiffs satisfy the third requirement to allege standing on behalf of their members. It does not appear that there is any need for plaintiffs' members to participate directly in this case because: (1) the fundamental question with respect to Count IV is a legal question – whether the EPA acted arbitrarily, capriciously, or contrary to law when reviewing Massachusetts' administration of its SRF funds; and (2) plaintiffs do not seek damages on behalf of individuals, but rather declaratory and injunctive relief. See Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Brock, 477 U.S. 274, 287-88 (1986).

The only remaining question is whether at least one of CLF or BBC's members would have standing to sue as an individual. See Animal Welfare Inst., 623 F.3d at 25. For the following reasons, it is adequately alleged that plaintiffs' members would have standing to sue as individuals.

3. <u>Plaintiffs Have Adequately Alleged Their Standing to Assert Count IV</u>

a. <u>Injury In Fact</u>

Plaintiffs in this case have sufficiently alleged an injury in fact to their members. An injury in fact is the "invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." <u>Lujan</u>, 504 U.S. at 560 (internal quotation marks, citations, and footnote omitted). For an injury to be "particularized," it "must affect the plaintiff in a personal and individual way." <u>Id.</u> at 560 n.1; <u>accord</u> <u>ComCox, Inc. v. Chaffee</u>, 536 F.3d 101, 107 (1st Cir. 2008). Environmental plaintiffs can establish an injury in fact when they adequately "aver that they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity." <u>Friends of the Earth</u>, 528 U.S. at 183 (quoting <u>Sierra Club v. Morton</u>, 405 U.S. 727, 735 (1972)).

In this case, CLF and BBC allege that their "members live near embayments and other interconnected surface waters on Cape Cod that are degraded by nitrogen pollution and use these waters for recreational, commercial, and aesthetic enjoyment." FAC ¶20. They claim that their members swim, fish, and boat in those waters, and enjoy the views of the embayments. <u>See</u> <u>id.</u> Plaintiffs assert that the "nitrogen pollution in the bays is causing degradation of the resource that has limited and continues to limit Plaintiffs'

10

members' ability to engage in these activities." Id. With respect to plaintiffs' SRF claim in particular, they allege that as a result of the EPA's actions concerning the Commonwealth's administration of its SRF funds, plaintiffs "have suffered and will continue to suffer injuries to their aesthetic, environmental, recreational, and commercial interests in enjoying and utilizing the affected Cape Cod waters." Id. ¶104.

Those allegations are analogous to the allegations of injury that the Supreme Court has deemed to be sufficient to defeat a motion to dismiss in other cases. For example, in Bennett, the petitioners alleged that the agency action at issue would reduce the quantity of water available for irrigation from a particular source on which the petitioners relied for irrigation water. See 520 U.S. at 167. The Supreme Court concluded that the petitioners' sufficiently alleged injury in fact based on their assertion "that the amount of available water will be reduced and that they will be adversely affected thereby." Id. at 168.

Similarly, in United States v. Students Challenging Regulatory Agency Procedures (SCRAP), the plaintiffs alleged "that their members used the forests, streams, mountains, and other resources in the Washington metropolitan area for camping, hiking, fishing, and sightseeing, and that this use was disturbed by the adverse environmental impact caused by the failure to use recyclable goods brought about by a rate increase on those commodities." 412 U.S.

669, 685 (1973). Those claims were sufficient to defeat a motion to dismiss, in part because the plaintiffs "alleged a specific and perceptible harm that distinguished them from other citizens who had not used the natural resources that were claimed to be affected." Id. at 689. Here, plaintiffs have alleged a specific adverse impact on their concrete interests in a particular geographic area, which distinguishes them from others who do not live near or use the embayments. See FAC ¶¶20, 104.

In addition, the injury that plaintiffs allege with respect to Count IV is actual and imminent. An actual or imminent injury is one that is "not conjectural or hypothetical." Lujan, 504 U.S. at 560 (internal quotation marks omitted); accord ComCox, Inc., 536 F.3d at 107. With regard to the requirement that an injury be actual or imminent, the Supreme Court has "said in a related context, 'Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.'" Lujan, 504 U.S. at 564 (quoting Los Angeles v. Lyons, 461 U.S. 95, 102 (1983)). Here, plaintiffs allege that the harm to their recreational, commercial, and aesthetic interests in the embayments is occurring and will continue to occur. See FAC ¶¶20, 104. Such allegations, viewed under the proper standards governing a motion to dismiss, are sufficient for plaintiffs to seek declaratory and injunctive relief in this case.

The allegations of injury in this case are distinguishable from allegations that the Supreme Court held were not sufficient for an organizational plaintiff to have standing. In <u>Sierra Club v. Morton</u>, the organizational plaintiff "failed to allege that it or its members would be affected in any of their activities or pastimes by the" actions at issue. 405 U.S. 727, 735 (1972). In that case, "[n]owhere in the pleadings or affidavits did the Club state that its members use [the affected geographic area] for any purpose, much less that they use it in any way that would be significantly affected by the proposed actions of the respondents." <u>Id.</u> Unlike in <u>Morton</u>, plaintiffs in this case have alleged that their members' swimming, fishing, and boating activities have been and continue to be affected by the EPA's deficient reviews of Massachusetts' use of its SRF funds. <u>See</u> FAC ¶¶20, 103-04.

b. <u>Causation</u>

Plaintiffs have also sufficiently alleged the causation element of standing. With respect to that element, "there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly . . . trace[able] to the challenged action of the defendant." <u>Lujan</u>, 504 U.S. at 560 (internal quotation marks omitted); <u>accord Katz</u>, 672 F.3d at 71-72. In this case, plaintiffs allege that: "As a result of Defendants' legally deficient oversight reviews, SRF funds have been spent and continue to be spent on projects that contribute to violations of

13

water quality standards." FAC ¶13. "As a result of Defendants' actions and omissions" with respect to SFR-funded projects, plaintiffs claim that they "have suffered and will continue to suffer injuries to their aesthetic, environmental, recreational, and commercial interests in enjoying and utilizing the affected Cape Cod waters." Id. ¶104.

Defendants argue that the EPA's oversight of the Commonwealth's administration of its SRF funds is not the cause of any injury to plaintiffs. Rather, defendants contend that Massachusetts – a third party not before the court – has made SRF funding decisions that may have harmed plaintiffs. With respect to causation, the Supreme Court has stated that "it does not suffice if the injury complained of is 'th[e] result [of] the independent action of some third party not before the court.'" Bennett, 520 U.S. at 169 (quoting Lujan, 504 U.S. at 560-61) (emphasis in original). However, that statement does not mean that defendants' actions must be "the very last step in the chain of causation." Bennett, 520 U.S. at 169. Plaintiffs can show causation if their injury was "produced by determinative or coercive effect upon the action of someone else." Id.

As explained earlier, defendants are correct that Massachusetts has a responsibility for ensuring that each SRF-funded project on Cape Cod is consistent with the §208 areawide plan from 1978. See 33 U.S.C. §1383(f). In the EPA's annual

oversight reviews, it is responsible for ensuring that any SRF-funded project on Cape Cod is consistent with the 1978 §208 areawide plan. See id. §§1383(f) and 1386(e). If the EPA determines that Massachusets is not spending its SRF funds in accordance with the SRF provisions of the CWA, "the Administrator shall notify the State of such noncompliance and the necessary corrective action." Id. §1385(a). "If a State does not take corrective action within 60 days . . . the Administrator shall withhold additional payments to the State until the Administrator is satisfied that the State has taken the necessary corrective action." Id. §1385(b). Conversely, as the parties have agreed, if the EPA's annual reviews reveal that Massachusetts' administration of its SRF funds is in compliance, federal money can continue to flow into and out of the Commonwealth's SRF.

Based on the foregoing manner in which decisions about SRF funding are made, even if Massachusetts makes the ultimate decisions concerning how to administer SRF funds on Cape Cod, the Commonwealth is not an "independent" third party actor in this case. Bennett, 520 U.S. at 169 (emphasis in original). Massachusetts' ability to disburse SRF funds in the harmful manners that plaintiffs allege has been "produced by [the] determinative or coercive effect" of the EPA's oversight decisions. Id. Accordingly, plaintiffs have sufficiently alleged causation in this case.

c. <u>Redressibility</u>

With regard to the third element of constitutional standing, plaintiffs have sufficiently alleged that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." <u>Lujan</u>, 504 U.S. at 561 (internal quotation marks omitted); <u>accord</u> <u>Katz</u>, 672 F.3d at 72. Plaintiffs claim that, "[a]s a result of Defendants' legally deficient oversight reviews" the embayments have been degraded and their interests harmed. FAC ¶13; <u>see also</u> <u>id.</u> ¶¶103-04. With the exception of plaintiffs' legal conclusion about the deficiency of defendants' oversight reviews, at the motion to dismiss stage, the court must construe this allegation liberally, treat it as true, and "accord[] the plaintiff the benefit of all reasonable inferences." <u>Murphy</u>, 45 F.3d at 522; <u>accord</u> <u>Calderon-Serra</u>, 715 F.3d at 17. The Supreme Court has characterized plaintiffs' burden of alleging redressibility at the motion to dismiss stage as "relatively modest." <u>Bennett</u>, 520 U.S. at 171.

Under those standards, if the court were to grant plaintiffs the relief that they seek and declare that defendants' oversight reviews of the Commonwealth's administration of its SRF funds has been arbitrary, capricious, or contrary to law, and order the EPA to notify Massachusetts that its SRF funding does not comply with the applicable statutory requirements, there is a likelihood that such relief would remedy the injury to plaintiffs. This is  because

16

the alleged injury to plaintiffs' members' interests in the embayments is "a result of" defendants' allegedly deficient oversight of SRF funding allocations. FAC ¶13.

Defendants argued at the August 21, 2013 hearing and in their memoranda of law that plaintiffs' SRF claim fails because they have not alleged that a particular SRF-funded project on Cape Cod is inconsistent with the §208 areawide plan and, despite that inconsistency, the EPA has continued to provide SRF funds to Massachusetts. Defendants are correct that the allegations plaintiffs make in support of Count IV would be stronger if they named a particular SRF-funded project that is inconsistent with the §208 areawide plan, or if they named particular members of their organizations who have been injured by a specific project.

However, for the reasons discussed earlier, plaintiffs have sufficiently alleged injury in fact, causation, and redressibility at the pleading stage, when "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim." Lujan, 504 U.S. at 561. A heightened pleading standard, such as that announced by the First Circuit in United States v. AVX Corp., 962 F.2d 108, 118 (1st Cir. 1992), might require plaintiffs to name particular SRF projects or specific members in their First Amended Complaint. However, such a heightened standard applies only to an intervener's

allegations. See Sea Shore Corp. v. Sullivan, 158 F.3d 51, 55 n.3 (1st Cir. 1998) ("AVX's core holding that an intervener seeking to establish appellate standing must set forth specific facts — remains good law.") (emphasis in original); Citizens for Squirrel Point v. Squirrel Point Assoc., No. 03-193-P-H, 2003 WL 22867620, at *2 n.2 (D. Me. Dec. 4, 2003). Moreover, plaintiffs' SRF claim does not depend on an individual project being inconsistent with the 1978 areawide plan. Rather, they allege that the EPA's actions have been arbitrary, capricious, or contrary to law because the agency continues to perform annual reviews of Massachusetts' use of its SRF funds in relationship to a §208 areawide plan that is outdated and expressly provides for annual updates, which have not been made. See FAC ¶¶84-85, 100-03.

As in Bennett, plaintiffs' general allegations concerning the EPA's failed oversight of Massachusetts' administration of its SRF funds "make it easy to presume specific facts under which petitioners will be injured." 520 U.S. at 168. In this case, plaintiffs allege that because the §208 areawide plan for Cape Cod is so outdated, and the plan states that it will be updated annually, any decisions by the EPA to continue to allow Massachusetts to fund projects consistent with that 1978 plan are arbitrary, capricious, or contrary to law. See FAC ¶¶84-85, 100-03. Plaintiffs further allege that "[a]s a result of Defendants' actions and omissions" with respect to the administration of SRF

funds on Cape Cod, they have suffered injuries to their interests
in the embayments. Id. ¶104. Based on those general allegations,
the court may presume at this stage of the litigation that a
specific project on Cape Cod which has been funded with federal SRF
money has contributed to the nitrogen pollution because, at least
in part, of its consistency with a §208 areawide plan that is
outdated.

### d. Zone of Interests Test

Plaintiffs' allegations also satisfy the prudential zone of
interest test for standing. The test for whether a plaintiff falls
within the zone of interest of a statute "is not meant to be
especially demanding." Clarke v. Sec. Indus. Ass'n, 479 U.S. 388,
399 (1987). It is particularly generous with respect to claims
brought under the APA. See Bennett, 520 U.S. at 163 (quoting
Clarke, 479 U.S. at 400 n.16); Charles A. Wright & Arthur R.
Miller, Federal Practice and Procedure §3531.7 (3d ed.). "The test
forecloses suit only when a plaintiff's 'interests are so
marginally related to or inconsistent with the purposes implicit in
the statute that it cannot reasonably be assumed that Congress
intended to permit the suit.'" Patchak, 132 S. Ct. at 2210 (quoting
Clarke, 479 U.S. at 399); accord Nulankeyutmonen Nkihtaqmikon v.
Impson, 503 F.3d 18, 30 (1st Cir. 2007). To show that they are
within the zone of interest of a statute, plaintiffs need not
establish "any 'indication of congressional purpose to benefit the

would-be plaintiff.'" <u>Patchak</u>, 132 S. Ct. at 2210 (quoting <u>Clarke</u>, 479 U.S. at 399-400).

Under the reasoning in <u>Harvey v. Veneman</u>, 396 F.3d 28, 35 (1st Cir. 2005), plaintiffs in this case are within the zone of interest of the CWA. The purpose of the statute at issue in <u>Harvey</u> was to uphold certain organic food standards. Here, the purpose of the CWA is to uphold certain water quality standards. The overall objective of the CWA "is to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. §1251(a). More specifically, the SRF-related provisions of the CWA serve the purpose of providing federal funding for states to finance projects that assist with the management of sewage, non-point pollution sources, and estuaries. <u>See</u> <u>id.</u> §1381(a). Plaintiffs in this case allege that the EPA's reviews of Massachusetts' administration of its SRF funds has undermined the integrity of the CWA and contributed to the degradation of the waters that plaintiffs' members enjoy. <u>See</u> FAC ¶¶13, 103-04. The plaintiffs are, in essence, "consumers" of the embayments, just as the plaintiff in <u>Harvey</u> was a consumer of organic foods, <u>see</u> 396 F.3d at 34. Similar to the plaintiff in <u>Harvey</u>, CLF and BBC's members' interests as "consumers" have been undermined by the EPA's alleged actions and omissions with respect to its oversight of the administration of SRF funds on Cape Cod.

The cases on which defendants rely to support their argument

that plaintiffs are not within the CWA's zone of interest are not persuasive. Defendants' reliance on Citizens Alert Regarding the Env't v. EPA is unavailing in part because that case did not involve a zone of interest inquiry. See Defs.' Mot. to Dismiss at 34 (citing 259 F. Supp. 2d 9, 25 (D.D.C. 2003)). The other case on which defendants rely, Endsley v. City of Chicago, did not involve issues of standing or any statutory zone of interest; rather, that case concerned the question of whether a highway-related statute, 23 U.S.C. §129, provided for a private right of action. See Defs.' Mot. to Dismiss at 35 (citing 230 F.3d 276, 281 (7th Cir. 2000)).

C. Ripeness

At least for the purpose of deciding the motion to dismiss, the court finds plaintiffs' SRF claim is ripe for adjudication. Whether or not a claim is ripe involves several considerations. The first "critical question concerning fitness for review is whether the claim involves uncertain and contingent events that may not occur as anticipated or may not occur at all." Ernst & Young v. Depositors Econ. Prot. Corp., 45 F.3d 530, 536 (1st Cir. 1995) (internal quotation marks omitted). Defendants are mistaken in characterizing Count IV as being premised on the EPA's alleged failure to consider a future, hypothetical §208 areawide plan for Cape Cod when performing its annual SRF reviews. As explained earlier, plaintiffs allege that because the §208 areawide plan for Cape Cod is so outdated, and the plan states on its face that it

will be updated annually, any decisions by the EPA to continue to allow Massachusetts to fund projects consistent with that 1978 plan are arbitrary, capricious, or contrary to law. <u>See</u> FAC ¶¶84-85, 100-03. Those allegations are not speculative or dependent upon events that may not occur.

The second ripeness "inquiry focuses on the hardship that may be entailed in denying judicial review. In general, the greater the hardship, the more apt a court will be to find ripeness." <u>Ernst & Young</u>, 45 F.3d at 536. In this case, plaintiffs allege that the EPA's unlawful review of Massachusetts' administration of its SRF funds has caused and is causing nitrogen pollution to degrade the embayments, which has resulted in injuries to plaintiffs' interests in those waters. <u>See</u> FAC ¶104. There is not any reason to delay adjudication of plaintiffs' SRF claim based on a lack of hardship.

D. <u>Final Agency Action</u>

The allegations concerning the EPA's annual reviews of Massachusetts' administration of its SRF funds are within the APA's definition of agency action and satisfy the standard for finality under the APA.

The APA provides for judicial review where there is "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. §704. "Agency action" is defined by statute to "include[] the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure

to act." Id. §551(13). With respect to the finality requirement, in general "two conditions must be satisfied for agency action to be 'final.'" Bennett, 520 U.S. at 177. "First, the action must mark the 'consummation' of the agency's decisionmaking process, it must not be of a merely tentative or interlocutory nature." Id. at 177-78 (quoting Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp., 333 U.S. 103, 113 (1948)) (internal citation omitted). "And second, the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" Bennett, 520 U.S. at 178 (quoting Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic, 400 U.S. 62, 71 (1970)).

Because the EPA's action in performing its annual reviews under §1386(e) results in the continuation or cessation of funding, those reviews are within the APA's definition of agency action. Although the EPA's annual reviews under §1386(e) are not explicitly a rule, order, sanction, or other agency action enumerated in §551(13) of the APA, as the parties have agreed, the EPA's annual reviews determine whether federal SRF funding will continue to flow to the states. If the EPA determines that a state is not complying with the SRF provisions of the CWA, the agency must cease to provide SRF funding, unless the state rectifies its actions and complies with the statute. See 33 U.S.C. §1385(a) and (b). Courts have concluded that an agency's decision to award or withhold funds constitutes agency action under the APA even when that decision is

not expressly embodied in a rule, order, or sanction. For example, one court has concluded that an agency's letter providing for an "irreversible commitment of resources" constitutes a "final agency determination." <u>Nat'l Wildlife Fed'n v. Harvey</u>, 440 F. Supp. 2d 940, 947 (E.D. Ark. 2006). Another court has concluded that the Department of Education's "determination" that federal funding cannot be provided to for-profit charter schools is final agency action. <u>Ariz. State Bd. for Charter Schs. v. U.S. Dep't of Educ.</u>, 391 F. Supp. 2d 800, 802 (D. Ariz. 2005).

With regard to the first prong of the test for finality under the APA, the EPA's annual reviews of the Commonwealth's administration of its SRF funds constitutes the "'consummation' of the agency's decisionmaking process." <u>Bennett</u>, 520 U.S. at 178. As noted earlier, the parties agree that if the EPA finds that Massachusetts is in compliance with the SRF provisions of the CWA, then federal funding continues to flow into the Commonwealth's SRF. Such agency decisions concerning funding are properly deemed to be final agency action. <u>See</u> <u>Harvey</u>, 440 F. Supp. 2d at 947; <u>Ariz. State Bd. for Charter Schs.</u>, 391 F. Supp. 2d at 802.

With regard to the second requirement for finality, the EPA's annual reviews of Massachusetts' administration of its SRF funds determine the Commonwealth's obligations, and legal consequences flow from the EPA's decision to provide SRF funding. <u>See</u> <u>Bennett</u>, 520 U.S. at 178. The EPA's disbursal of SRF funds to Massachusetts

is predicated on the Commonwealth fulfilling certain obligations. See 33 U.S.C. §1382 (setting forth the requirements that a state must meet to receive SRF funds); id. §§1383(d) and (f) (stating the uses for which SRF funds can be used and the requirements for projects to be funded). Accordingly, if during the EPA's annual review, the agency determines that Massachusetts is in compliance with the SRF-related provisions of the CWA, the aforementioned obligations on behalf of the Commonwealth continue. Alternatively, if the EPA in its annual review determines that the Commonwealth has failed to comply with its obligations under the SRF provisions of the CWA and the state does not timely come into compliance there is a legal consequence – the EPA must cease to provide Massachusetts with funding for its SRF. See id. §1385(a) and (b).

In addition, the EPA's annual reviews of the Commonwealth's administration of its SRF funds does not have the quality of actions that courts have determined to not be final under the APA. For example, in Bennett, the Supreme Court stated that advisory reports and recommendations that carry no "binding" or "direct consequences," are not final agency action. 520 U.S. at 178 (internal quotation marks omitted). Nor are the EPA's annual reviews analogous to an audit or investigation, as defendants argue. See Defs.' Mot. to Dismiss at 38 (citing Ass'n of Am. Med. Colls. v. United States, 217 F.3d 770, 781 (9th Cir. 2000) and Univ. of Med. & Dentistry of N.J. v. Corrigan, 347 F.3d 57, 68-69

(3d Cir. 2003), <u>cert. denied</u>, 542 U.S. 937 (2004)). In each of the two cases cited by defendants the courts were addressing whether an inspector general's decision to initiate an audit and investigation of the plaintiffs' medical billing practices was final agency action. <u>See</u> <u>Ass'n of Am. Med. Coll</u>, 217 F.3d at 780-81; <u>Univ. of Med. & Dentistry of N.J.</u>, 47 F.3d at 68-69. That sort of investigation prior to any enforcement action "is quintessentially non-final as a form of agency action." <u>Ass'n of Am. Med. Colls.</u>, 217 F.3d at 781.

The EPA's review of Massachusetts' administration of its SRF funding in this case is not analogous to a non-binding recommendation, report, or investigatory audit that merely required the Commonwealth to cooperate with the audit. <u>See</u> <u>Corrigan</u>, 347 F.3d at 68-69. Instead, the agency action in this case resulted in definite obligations on behalf of the Commonwealth and the allocation of federal funding.

III. ORDER

In view of the foregoing, defendants' Motion to Dismiss (Docket No. 34) is hereby DENIED with regard to Count IV.


                                    /s/ Mark L. Wolf
                              UNITED STATES DISTRICT JUDGE